**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

L<small>AVALAS</small> E<small>XTON</small>,

        Defendant/Petitioner,

v.

U<small>NITED</small> S<small>TATES OF</small> A<small>MERICA</small>,

        Plaintiff/Respondent.

_____/

Case No. 05-80273
Case No. 07-11692

Honorable Arthur J. Tarnow
United States District Judge

**ORDER DENYING PETITIONER'S MOTION [50]
TO VACATE CONVICTION AND SENTENCE
PURSUANT TO 28 U.S.C. § 2255**

### I. INTRODUCTION

Lavalas Exton ("Defendant" or "Petitioner") moves pursuant to 28 U.S.C. § 2255 to vacate or set aside his conviction and sentence. The sentence followed an April, 2006, jury trial, at which Defendant was convicted under 18 U.S.C. § 922(g)(1) of one count of being a felon in possession of a firearm. The Court imposed a sentence of 26 months and ordered that Defendant remain free on bond pending appeal. The Court then permitted Defendant to file a habeas petition without direct appeal, because no grounds for direct appeal had been preserved at trial.

Thereafter, Defendant filed this motion grounded on a claim of ineffective assistance of counsel. The Government responded, and Defendant filed a Reply requesting that the Court grant an evidentiary hearing on the claims raised in the habeas petition. The evidentiary hearing was held, five witnesses testified, and the parties supplemented the record with documentary exhibits. At the directive of the Court, the parties then filed supplemental briefs.

After careful consideration, the Court finds that the record does not sustain Petitioner's claim of ineffective assistance of counsel. Petitioner's motion to vacate under § 2255 is therefore **DENIED**.

## II. BACKGROUND

On July 4, 2004, city police officers raided a house on Plainview Avenue in Detroit. The officers had obtained a search warrant based on a confidential informant's statement that he or she had seen large quantities of cocaine at that address. When the warrant was executed, Defendant and co-defendant Simone Lassiter ("Lassiter") were present at the house. Both were allegedly sleeping on a couch in what was later described as "minimal" clothing; Lassiter wore a nightgown or T-shirt, and Exton wore only boxer shorts. The house was described as filthy and under construction. The building had no running water or electricity, and sewage was backed up in the bathroom and in the basement. A non-functioning stove was in the living room.

No cocaine was found in the home, but the officers confiscated four firearms. The officers testified that an AK-47 assault rifle was propped up against the western living room wall near the couch, a Colt .45 handgun was found concealed beneath the sofa cushion on which the defendants were sleeping, a Llama .45 handgun was retrieved from underneath the couch itself, and a Ruger 9 millimeter handgun, wrapped in a t-shirt, was recovered from beneath a false step on the staircase leading out of the living room. The serial number on one of the guns had been obliterated.

While the search warrant was executed, the defendants were detained in the living room. According to the trial testimony of three police officers, the detained defendants at some point whispered inaudibly to each other, after which Lassiter voluntarily stated to the police that all of the firearms belonged to her. The officers testified that they did not hear the contents of the alleged whispering, and they acknowledged that they did not document in their police reports any observations of the whispered conversation between Defendant and Lassiter.

In February, 2005, criminal complaints were filed against both defendants, with indictments following in March. Each defendant was charged with one count of being a felon in possession as to each of the four firearms, and with one count of possession of a firearm with an obliterated serial number. Defendant's case was initially assigned to the Federal Defender Office (FDO), but Defendant subsequently retained private counsel. On April 11, 2005, Lassiter pleaded guilty

pursuant to a Rule 11. Also on April 11, the defaced firearm charge was dismissed as to both defendants.

Represented by attorney Craig Tank, Defendant went to trial on April 18-19, 2006, on the remaining charge of being a felon in possession of four firearms. Because the parties had stipulated to two elements of the charge,[1] Defendant's "possession" – either actual or constructive – of the firearms was the only issue to be proven at trial. The jury deliberated for approximately 40 minutes before returning a verdict of guilty.

Trial counsel's appearance was then terminated, and the Court reappointed the FDO to represent Defendant at sentencing. FDO attorney Penny Beardslee filed an appearance in November, 2006, and represented Defendant both at sentencing and in the filing of this § 2255 motion. Then, after the second of three sessions at which the Court heard evidence on the habeas petition, the FDO moved to withdraw from Petitioner's representation so that FDO attorney Beardslee could testify as a witness at the final session of the hearing. The Court granted the motion to withdraw, and attorney Douglass Mullkoff was appointed to continue Petitioner's representation.

### III.  STANDARD OF REVIEW

In Strickland v. Washington, the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. See 466 U.S. 668 (1984).

First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. Id. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

---

[1] The parties stipulated to Defendant's prior felony conviction, and stipulated that the guns had moved in interstate commerce.

Second, a petitioner must establish that counsel's deficient performance prejudiced the defense so seriously as to deprive the petitioner of a fair trial. Id. at 687. It is the petitioner's burden to establish prejudice, and the petitioner must show more than that the errors could conceivably have influenced the outcome; rather, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693, 694.

In analyzing an ineffective assistance claim, the Court considers "'the totality of the evidence – "both that adduced at trial, and the evidence adduced in the habeas proceeding."'" Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005) (internal citations omitted).

## IV. DISCUSSION

### A. A Petitioner Free on Bond Is "In Custody" for Purposes of Habeas Jurisdiction

As a threshold matter, the Government argues that because Petitioner is free on bond pending appeal, he is not "in custody" as required to sustain a § 2255 motion.

For purposes of habeas jurisdiction, courts have not interpreted the phrase "in custody" so narrowly as the Government suggests. The Supreme Court of the United States has held under a variety of circumstances that a petitioner need not be confined in actual, physical custody to invoke the habeas jurisdiction of the federal courts. See, e.g., Peyton v. Rowe, 391 U.S. 54, 67 (1968) (holding that "a prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of a habeas petition"); Jones v. Cunningham, 371 U.S. 236, 243 (1963) (holding that a paroled petitioner was subject to "conditions which significantly confine[d] and restrain[ed] his freedom," such that he was in "'custody' . . . within the meaning of the habeas corpus statute").

Here, this Court has imposed a sentence that Petitioner must serve if his habeas petition is unsuccessful. That pending sentence is sufficient to satisfy the "in custody" requirement of § 2255.

4

**B. Petitioner Has Not Established Constitutionally Deficient Performance of Counsel**

Petitioner argues a number of grounds upon which trial counsel's performance should be found constitutionally deficient. Most emphatically, Petitioner argues that counsel was ineffective because he: (1) failed to interview Petitioner's co-defendant, Simone Lassiter, and to call her as a witness at trial. Additionally, Petitioner argues that his attorney's performance was deficient insofar as counsel: (2) failed to present evidence showing where Petitioner lived at the time of the raid, that Petitioner was renovating the Plainview home, and that Petitioner and Lassiter were not romantically involved; (3) failed to make particular objections at trial; (4) emphasized damaging testimony by Government witnesses, and; (5) failed to make a Rule 29 motion to preserve sufficiency of the evidence as a ground for appeal.

(1) *Failure to Interview or Call Simone Lassiter as a Witness*

In support of his main argument for habeas relief, Petitioner suggests that his trial attorney could have had "no legitimate trial strategy in failing to, at a minimum, interview a known witness who has accepted responsibility for the firearms that [his] client is alleged to have possessed." In response, the Government notes that "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." See Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993).

Trial counsel has a duty to "explore all avenues leading to facts relevant to the merits of the case." Rompilla v. Beard, 545 U.S. 374, 387 (2005) (internal citations omitted). That duty "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." Towns, 395 F.3d at 258. Alternatively stated, "[c]ounsel has the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.

On several occasions, the Sixth Circuit has found ineffective assistance of counsel based on an attorney's failure to investigate potential witness testimony. Relevant cases include Workman v. Tate, in which the petitioner's attorney was found ineffective for having failed to contact or call

5

the only two non-police witnesses who were present during the charged incident, despite the petitioner's urging, and despite the fact that the witnesses had traveled at petitioner's request from West Virginia to Ohio specifically to testify at trial. See 957 F.2d 1339, 1341 (6th Cir. 1992). The attorney made "no attempt to investigate what [the witnesses'] testimony might have been." Id.

In Stewart v. Wolfenbarger, an attorney's performance was deemed ineffective when the attorney had failed to investigate a witness whom the petitioner had "specifically told . . . [the attorney] to subpoena," and who could have testified that the petitioner was not present at the site of the shooting with which the petitioner had been charged. 468 F.3d 338, 356 (6th Cir. 2006).

In Towns v. Smith, an attorney was deemed ineffective when he "made absolutely no attempt to communicate with [a potential alibi witness], despite requesting that [the witness] be kept in the county jail" to be interviewed before trial, and despite the petitioner's urging that the attorney contact the witness. 395 F.3d at 259. In Towns, the court concluded that "there [was] absolutely no support for the . . . speculation that [the witness's] testimony would have been damaging to [the] defense," and that without having contact with the witness, "counsel 'was ill equipped to assess [the witness's] credibility or persuasiveness.'" Id. at 259, 260.

However, none of the foregoing cases holds that an attorney's failure to interview a witness is, *per se*, ineffective assistance of counsel. In fact, language from Strickland weighs against such a ruling. Strickland warns against "the distorting effects of hindsight," and requires a fact-sensitive inquiry in which courts are "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689, 690. Specifically, Strickland holds that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary." Id. at 690-91. Strickland also anticipates an issue at the center of this petition, holding that "what investigation decisions are reasonable depends critically on . . . information supplied by the defendant," and that "when a

6

defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id. at 691.

In each of the foregoing Sixth Circuit cases, an attorney was found ineffective for failing to investigate a witness despite the client's urging. Here, in contrast, it appears that it was not until after trial counsel had substantial discussions with his client that he declined to interview Lassiter. During those discussions, it appears that: Petitioner "indicated there had been a dispute several years beforehand and that [Lassiter] had shot him"; "[Petitioner] was concerned [about Lassiter testifying] because she was angry . . . that [Petitioner] got her caught up in this" case; "[Petitioner] indicated . . . that he was concerned that if [they] did in fact call [Lassiter], that she may very well, if she was mad at him on that date, indicate that he had been staying [at the Plainview house], that they had a relationship together and that he had been moving drugs out of the house."

Trial counsel also reported having contacted Lassiter's lawyer, although that lawyer did not recall the conversation. Finally, trial counsel testified at the evidentiary hearing that he "was concerned that if [Lassiter] took the stand, that she could implicate [his client]. And so [he] started to take a look at the evidence, the tapes and things like that as a way . . . to try to get in some of the positive things that she may have said in the past."

Here, trial counsel did not interview Lassiter directly, but he did not completely fail to investigate her potential testimony. Unlike the scenario in Towns, for example, counsel apparently did have actual "support for [his] speculation that [Lassiter's] testimony would have been damaging to [the] defense." Cf. 395 F.3d at 259. Trial counsel had before him his client's own credible representations, which Strickland suggests should "substantially influenc[e]" the Court's evaluation of the "reasonableness" of counsel's actions. See 466 U.S. at 691. Also, here, trial counsel was not otherwise uninformed about Lassiter. He acknowledged his receipt of an Investigation Memo produced by the FDO during the early stages of the case, and had multiple subsequent conversations with FDO counsel about Lassiter's testimony. When Lassiter telephoned trial counsel's office

7

directly, as she had also called the FDO office, counsel testified that he spoke to her briefly before terminating the conversation pending the availability of her attorney to participate in the discussion. Perhaps most importantly, trial counsel not only sought access to tape-recorded statements by Lassiter, but also succeeded in arguing for a hearsay exception and admitting at trial those portions of the audiotape that were favorable to his client's defense.

If, as it must, the Court gauges trial counsel's decision not to interview Lassiter "from [his] perspective at the time of the decision," it must conclude that counsel's decision fell "within the wide range of reasonable professional assistance" and that "under the circumstances, [this] challenged action 'might be considered sound trial strategy.'" Id. at 690 (internal citation omitted). Here, it appears that trial counsel made a "reasonable decision that [made] particular investigations unnecessary." Id. at 691.

Furthermore, if the Court credits trial counsel with a strategic decision not to pursue an interview with Lassiter, a presumption of strategic choice also excuses his decision not to call Lassiter to testify at trial. In addition to the points raised above, the evidentiary hearing produced substantial testimony about Lassiter's long-term, if sporadic, romantic relationship with Petitioner, and about her potential volatility as a witness. The evidence supports a conclusion that trial counsel made an objectively reasonable decision to forgo Lassiter's live testimony in favor of introducing at trial those of Lassiter's audiotaped statements that were favorable to Petitioner's defense. See id. at 687-88 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."). This is especially true because, even after the evidentiary hearing and supplemental briefing were complete, no evidence had been produced that Lassiter would actually have provided, as Petitioner repeatedly suggests, "exculpatory" testimony. Rather, it seems that Lassiter's most consistent testimony was that the guns belonged to her and that they were used for protection, a position that would not have been incompatible with the Government's theory of the

co-defendants' joint possession of the firearms.[2]

For the reasons discussed above, the Court determines that, against the factual background of this case, trial counsel's failure to interview or call Simone Lassiter as a witness did not constitute constitutionally deficient performance so as to sustain a claim of ineffective assistance of counsel.

(2) *Failure to Present Other Evidence*

Petitioner also argues that trial counsel failed to show where Petitioner lived at the time of the raid, that Lassiter lived alone at Plainview, that Petitioner was renovating the Plainview home, and that Petitioner and Lassiter were not romantically involved.

The Government responds that "[t]here were physical exhibits admitted that actually demonstrated what present counsel suggests that trial counsel should have called witnesses to testify about" – for example, the parties stipulated to the admission of Plainview utility records in Petitioner's name, and of state-issued ID cards that showed multiple addresses for Petitioner. Also, through cross-examination of Government witnesses, trial counsel attempted to elicit an acknowledgment that the Plainview home was under construction.

The record does not support Petitioner's contention that trial counsel failed to produce favorable evidence or testimony to such an extent as to constitute ineffective assistance of counsel.

(3) *Failure to Object*

Petitioner faults trial counsel's failure to object to the Government's characterization of Lassiter as Petitioner's girlfriend, rather than as his tenant. The Government responds that "[l]earned counsel use objections in a tactical manner," and notes the points during the trial at which trial counsel made other objections that were sustained by the Court. Quoting Lundgren v. Mitchell, 440 F.3d 754, 774 (6th Cir. 2006). The Government also notes the proposition that "[i]mpeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel

---

[2] At trial, the Prosecutor explained to the jury the concept of joint possession. The Government carefully and consistently distinguished between possession and ownership, and reminded the jury that "ownership" was not a required element of the possession offense charged.

simply because in retrospect better tactics may have been available." Johnson v. Hofbauer, 159 F. Supp. 2d 582, 607-08 (E.D. Mich. 2001).

Insofar as trial counsel failed to object to the Government's characterization of Lassiter as Petitioner's "girlfriend," Petitioner reasonably finds fault with his attorney's performance. However, trial counsel's failure to object does not rise to the level of constitutional deficiency. As the Government notes, multiple police witnesses testified that, at the time of the Plainview raid, Petitioner and Lassiter were found sleeping together on a couch wearing "minimal clothing." In light of that testimony, an objection that Petitioner and Lassiter were not romantically involved may well have diminished trial counsel's credibility before the jury, and counsel had an adequate basis for a "tactical" decision not to object.

Trial counsel also did not object when the Government asked police witness Officer Tooles whether Tooles had thought, at the time of the raid, that Petitioner looked like a "landlord or someone who might be living in th[e] home." Construed as an "opinion" question posed to a lay witness, that inquiry might indeed have invited a sustainable objection, but Petitioner's argument is unconvincing that his attorney's failure to object rose to the level of constitutionally deficient performance. Petitioner's habeas counsel suggests that trial counsel should have argued to the jury that "a landlord/lessor does not have the legal right to possess items that belong to a tenant and are stored by the tenant on the rental property." It is true that trial counsel did not assert that theory of defense, but the mere fact that trial counsel's strategy diverged from that which habeas counsel would have pursued does not render trial counsel's performance ineffective.

In retrospect, it is clear that trial counsel's litigation strategy – which consisted entirely of efforts to cast doubt upon the integrity of the police work during the raid – did not ultimately convince the jury, but as Strickland warns, the Court must avoid "the distorting effects of hindsight" in evaluating the constitutional adequacy of an attorney's performance.

(4) *Emphasis on Damaging Testimony*

Petitioner also argues that trial counsel "adduced damaging testimony and presented arguments that supported the government's theory of prosecution." Counsel's failure to pursue the landlord/tenant distinction is discussed above. Petitioner's remaining argument is that trial counsel inappropriately "emphasiz[ed] the whispering between [Petitioner] and Lassiter prior to her statement" that the firearms belonged to her.

Trial counsel did spend considerable energy questioning several of the officer witnesses about the alleged whispering. However, a review of the trial transcript makes it fairly clear that his objective was to establish the officers' collective failure at the time of the raid to document the occurrence of the whispered conversation that they later described in court.

Here, trial counsel's tactics supported his apparent defense theory – that is, that the prosecution was based on questionable police work – and were not constitutional error.

(5) *Failure to Make a Rule 29 Motion*

Finally, Petitioner argues that his trial attorney's performance was constitutionally deficient for counsel's failure to make a Rule 29 motion for acquittal and thus to preserve the issue for appeal. The Government responds that, while the failure to make a motion for acquittal changed the standard of review on appeal, the absence of a Rule 29 motion does not bar appellate review altogether. See United States v. Carnes, 309 F.3d 950, 956 (6th Cir. 2002) (stating that the standard of review in such circumstances is for a "manifest miscarriage of justice"; reversal on appeal is merited only "if the record is 'devoid of evidence pointing to guilt'" (internal citation omitted)). Furthermore, the Government argues, a motion for acquittal would have been frivolous in this case, given the existence of ample evidence to support a rational juror's determination that Petitioner did in fact possess the firearms. Specifically, the Government presented at trial evidence that Petitioner owned the residence, kept personal belongings there, kept the utilities in his own name, and was present, wearing "minimal clothing," at the time of the raid, when several of the guns were within his easy reach.

11

Under the circumstances of this case, trial counsel's failure to make a Rule 29 motion does not constitute constitutionally deficient performance.

The Court holds that on no basis was the trial attorney's performance so deficient as to satisfy the first prong of the Strickland test for ineffective assistance of counsel.

Alternatively, any such deficiency did not prejudice the outcome of the trial, as would be required to meet the second prong of Strickland.

### C. **Alternatively, Petitioner Has Failed to Establish Prejudice**

The foregoing discussion suggests that while trial counsel's performance may have been substandard, he did not make "unprofessional errors" to a constitutionally significant dimension. To meet the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See 466 U.S. at 693, 694.

Here, to some extent, the Court has been forced to speculate as to the actual consequences of any substandard performance because trial counsel's shortcomings have been demonstrated, at least in part, by his complete failure to document his investigations and communications in this case. Nevertheless, counsel testified at the evidentiary hearing that he had physically examined the Plainview address, personally interviewed Rosalind Nelson before deciding not to call her as a witness, contacted Lassiter's lawyer to discuss Lassiter's potential testimony (although the lawyer did not recall such a conversation), and had a substantial discussion with his client about Lassiter before deciding to use Lassiter's taped statements instead of risking her live testimony. Had trial counsel generated reasonable documentation of his investigatory activities, his performance would have been far less susceptible to this ineffective assistance claim.

Because of the potentially severe consequences of the inadequacies of counsel's trial preparation, the Court now presumes, without holding, that the facts might support a determination that the attorney's performance constituted ineffective assistance of counsel. If so, it is nevertheless

12

unlikely that trial counsel's actions were the cause of Petitioner's conviction at trial. Thus, the second prong of the Strickland test is not satisfied.

At trial, the jury was presented both with Lassiter's statement that she owned the guns and that the guns were in the house for protection, and with Petitioner's own statement that he knew the guns were there and that they were used for protection. Evidence was presented to show that Petitioner owned the house and kept the utilities in his own name. Furthermore, the jury heard witness testimony that Petitioner and Lassiter were sleeping together, minimally clothed, on the same couch that was used to conceal two of the illegally-possessed firearms: one gun under the couch itself, and one under the very cushion on which the defendants slept. The Government was careful to explain to the jury that Petitioner did not need to own the guns in order to "possess" them, and that the jury could convict Petitioner on a finding that Petitioner and Lassiter had joint constructive possession of the weapons.

The jury's verdict was rational and supported by strong evidence. It is unlikely that any deficiencies in trial counsel's performance prejudiced the defense so seriously as to deprive Petitioner of a fair trial. See id. at 687. Thus, the second prong of the Strickland test is not satisfied.

## V. CONCLUSION

The Court holds that the record does not sustain Petitioner's claim of ineffective assistance of counsel. For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's motion to vacate or set aside his conviction and sentence under 28 U.S.C. § 2255 is **DENIED**.

**SO ORDERED.**

S/ARTHUR J. TARNOW
Arthur J. Tarnow
United States District Judge

Dated:  February 19, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 19, 2009, by electronic and/or ordinary mail.

                                S/THERESA E. TAYLOR
                                Case Manager